

March 2, 2026

**VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED**

Lance Rosenkranz, CEO & Agent for Service of Process
James A. Rosenkranz, Secretary & CFO
Los Angeles Galvanizing Company
2518 East 53rd Street
Huntington Park, CA 90255

Timothy A. Rosenkranz, Vice President
Los Angeles Galvanizing Company
6921 Lawn Haven Dr
Huntington Beach, CA 90255


**Re:    NOTICE OF VIOLATIONS AND INTENT TO FILE SUIT UNDER THE FEDERAL WATER POLLUTION CONTROL ACT ("CLEAN WATER ACT") (33 U.S.C. §§ 1251 *et seq*.)**

Dear Lance Rosenkranz, James Rosenkranz, and Timothy Rosenkranz:

This firm represents Los Angeles Waterkeeper ("LA Waterkeeper") regarding violations of the Clean Water Act (also referred to herein as the "Act") occurring at Los Angeles Galvanizing Company's facility located at 2518 East 53rd Street, in Huntington Park, California 90255 ("Facility").  This letter is being sent to you individually, as the responsible owners and/or operators of the enterprise, and as the registered agent for these entities.  Unless otherwise noted, Lance Rosenkranz, James Rosenkranz, Timothy Rosenkranz, and Los Angeles Galvanizing Company shall hereinafter be collectively referred to as "LA Galvanizing."  The purpose of this letter is to provide LA Galvanizing with notice of the violations of the Industrial General Permit occurring at the Facility, including, but not limited to, noncompliant discharges of polluted storm water associated with industrial activities from the Facility into local surface waters.

LA Galvanizing is in ongoing violation of the substantive and procedural requirements of the Clean Water Act, 33 U.S.C. § 1251 *et seq*., and National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001, State Water Resources Control Board Water Quality Order No. 14-57-DWQ as amended by Order No. 2015-0122-DWQ & Order No. 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load ("TMDL") Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use (collectively "General Permit" or "Permit").[1]

---

[1] LA Galvanizing most recently submitted a Notice of Intent ("NOI") to comply with the General Permit for the Facility on or about April 7, 2015.  The Facility is assigned the Waste Discharge Identification ("WDID") Number 4 19I004458.

Notice of Violation and Intent to File Suit
March 2, 2026
Page 2

Pursuant to Section 309(d) of the Act (33 U.S.C. § 1319(d)) and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4, each separate violation of the Act subjects LA Galvanizing to a penalty for all violations occurring during the period commencing five years prior to the date of the Notice Letter.  These provisions of law authorize civil penalties of up to $68,445 per day per violation for all Clean Water Act violations occurring after November 2, 2015, where penalties are assessed on or after January 8, 2025.

In addition to civil penalties, LA Waterkeeper will seek injunctive relief preventing further violations of the Act pursuant to Sections 505(a) and (d) (33 U.S.C. §1365(a) and (d)) and such other relief as permitted by law.  Lastly, Section 505(d) of the Act (33 U.S.C. § 1365(d)) permits prevailing parties to recover costs and fees, including attorneys' fees.

The Clean Water Act requires that sixty (60) days prior to the initiation of a citizen-enforcement action under Section 505(a) of the Act (33 U.S.C. § 1365(a)), a citizen enforcer must give notice of its intent to file suit.  Notice must be given to the alleged violator, the U.S. Environmental Protection Agency, and the Chief Administrative Officer of the water pollution control agency for the State in which the violations occur.  *See* 40 C.F.R. § 135.2.  As required by the Act, this letter provides statutory notice of the violations that have occurred, and continue to occur, at the Facility.  40 C.F.R. § 135.3(a).  At the expiration of sixty (60) days from the date of this letter, LA Waterkeeper intends to file suit under Section 505(a) of the Act in federal court against LA Galvanizing for violations of the Clean Water Act and the Permit.

## I.       Background.

### A.       Los Angeles Waterkeeper

LA Waterkeeper is a 501(c)(3) public benefit corporation organized under the laws of California with its main office located in Los Angeles, California.  LA Waterkeeper was founded in 1993, and its members live, work, and recreate in and around the Los Angeles area.  LA Waterkeeper is dedicated to the preservation, protection, and defense of the inland and coastal waters of Los Angeles County including without limitation the Los Angeles River and its tributaries.  To further its mission, LA Waterkeeper actively seeks federal and state implementation of the Clean Water Act.  Where necessary, LA Waterkeeper directly initiates enforcement actions on behalf of itself and its members.

Members of LA Waterkeeper own homes and reside in Los Angeles County, and use and enjoy the Los Angeles River, and its tributaries, and the bordering parks, pathways, golf courses and athletic fields.  As explained in detail below, LA Galvanizing discharges pollutants into the Los Angeles Municipal Separate Storm Sewer System ("MS4"), which discharges to Compton Creek, the LA River, the LA River Estuary, San Pedro Bay, and the Pacific Ocean ("Receiving Waters") in violation of the Clean Water Act and the General Permit.  LA Waterkeeper members also use and enjoy the Receiving Waters, including, without limitation, to bike, boat, kayak, bird watch, ride horses, view wildlife, hike, walk, and run.  Additionally, LA Waterkeeper members use the Receiving Waters to engage in scientific study through pollution and habitat monitoring and restoration activities. The unlawful discharge of pollutants from the Facility into the

Notice of Violation and Intent to File Suit
March 2, 2026
Page 3

Receiving Waters impairs LA Waterkeeper members' use and enjoyment of these waters. The unlawful discharge of pollutants from the Facility requires LA Waterkeeper to expend its limited resources to study and combat pollution from the Facility. Thus, the interests of LA Waterkeeper and its members have been, are being, and will continue to be adversely affected by LA Galvanizing's failure to comply with the Clean Water Act and the General Permit.

### B.     The Clean Water Act.

Congress enacted the CWA in 1972 to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251. The Act prohibits the discharge of pollutants into United States waters except as authorized by the statute. 33 U.S.C. § 1311; *San Francisco Bay Keeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1156 (9th Cir. 2002). The Act is administered largely through the NPDES permit program. 33 U.S.C. § 1342. In 1987, the Act was amended to establish a framework for regulating storm water discharges through the NPDES system. Water Quality Act of 1987, Pub. L. 100-4, § 405, 101 Stat. 7, 69 (1987) (codified at 33 U.S.C. § 1342(p)); *see also Envtl. Def. Ctr., Inc. v. EPA*, 344 F.3d 832, 840-41 (9th Cir. 2003) (describing the problem of storm water runoff and summarizing the Clean Water Act's permitting scheme). The discharge of pollutants not specifically allowed by a NPDES permit is illegal. *Ecological Rights Found. v. Pacific Lumber Co.*, 230 F.3d 1141, 1145 (9th Cir. 2000).

Much of the responsibility for administering the NPDES permitting system has been delegated to the states. *See* 33 U.S.C. § 1342(b); *see also* Cal. Water Code § 13370 (expressing California's intent to implement its own NPDES permit program). The CWA authorizes states with approved NPDES permit programs to regulate industrial storm water discharges through individual permits issued to dischargers and/or through the issuance of a single, statewide general permit applicable to all industrial storm water dischargers. 33 U.S.C. § 1342(b). Pursuant to Section 402 of the Act, the Administrator of the EPA has authorized California's State Board to issue individual and general NPDES permits in California. 33 U.S.C. § 1342.

### C.     California's General Permit for Storm Water Discharges Associated with Industrial Activities

Facilities discharging, or having the potential to discharge, storm water associated with industrial activities that have not obtained an individual NPDES permit must apply for coverage under the General Permit by filing a Notice of Intent to Comply ("NOI"). General Permit, Standard Condition XXI.A. These facilities must file their NOIs before the initiation of industrial operations. *Id.*

Facilities must strictly comply with all of the terms and conditions of the General Permit. A violation of the General Permit is a violation of the CWA. The General Permit contains three primary and interrelated categories of requirements: (1) discharge prohibitions, receiving water limitations and effluent limitations; (2) Storm Water Pollution Prevention Plan ("SWPPP") requirements; and (3) self-monitoring and reporting requirements.

Beginning under the General Permit Facilities must submit Exceedance Response Action Plans ("ERA Report") to the State Board outlining effective plans to reduce pollutants if a Facility reports a pollutant above the Numeric Action Level ("NAL"). An annual NAL exceedance occurs when the average of all the analytical results for a parameter from samples taken within a reporting year exceeds the annual NAL value for that parameter. General Permit

Notice of Violation and Intent to File Suit
March 2, 2026
Page 4

Section XII.A.  An instantaneous maximum NAL exceedance occurs when two (2) or more analytical results from samples taken for any single parameter within a reporting year exceed the instantaneous maximum NAL value or are outside of the instantaneous maximum NAL range for pH.  *Id.*

The General Permit contains requirements that are specific to the Total Maximum Daily Load ("TMDL") for watersheds and water bodies with U.S. EPA-approved and U.S. EPA-established TMDLs for Dischargers covered by the General Permit.  TMDLs relate to the maximum amount of a pollutant that a water body can receive and still attain water quality standards.  Dischargers located within a watershed for which a TMDL has been approved by U.S. EPA shall comply with any applicable TMDL-specific permit requirements that are set forth in Attachment E to the General Permit.  General Permit, V.C.  Dischargers shall compare all sampling and analytical results from each distinct sample to the corresponding instantaneous Numeric Effluent Limitations ("NEL") values in the TMDL Compliance Table E-2.  *Id.*, Attachment C at 5.  An exceedance of an NEL occurs when two or more analytical results from samples taken for any single parameter within a reporting year exceeds the instantaneous maximum NEL value.  *Id.*  An exceedance of an NEL is a violation of the General Permit.  *Id.*

### D.    LA Galvanizing's Huntington Park Facility

LA Galvanizing's main property is located at 2518 East 3rd Street in Huntington Park, California 90255, although the Facility is comprised of several adjacent properties that include 2518 East 53rd Street, 2527 East 53rd Street, 2513 East 53rd Street, and 2524 East 52nd Street.  For the purposes of this letter, the term "Facility" as defined above includes each of these addresses.  According to its SWPPP, last updated February 20, 2023 ("2023 SWPPP"), the Facility's primary industrial purpose is to conduct hot-dip galvanizing.  The 2023 SWPPP also states that the Facility's business hours are Monday through Friday from 6:00 a.m. to 4:00 p.m.

The 2023 SWPPP indicates that LA Galvanizing conducts industrial activities both indoors and outdoors at the approximately 2.4-acre Facility.  Industrial activities at the Facility include, but are not limited to: galvanizing metal, degreasing metal using a hot alkaline or caustic solution to remove dirt, oil, grease and soluble markings; pickling, which uses a dilute solution of hot sulfuric acid to remove surface rust and mill scale to provide a chemically clean metallic surface; fluxing, which is a process using a frothy blanket of zinc and ammonium chlorides that cleans and protects the previously pickled steel; and galvanizing, which is wear the steel is immersed in a bath of molten zinc, metallurgically bonding the zinc to the steel creating a series of highly abrasion-resistant zinc-iron alloy layers. and the operation of equipment in support of these activities.

Under the General Permit, LA Galvanizing is required to analyze its samples of storm water for total suspended solids, oil and grease, and pH.  Facilities must also sample and analyze for additional parameters identified on a facility-specific basis for parameters identified in a pollutant source assessment, for parameters related to receiving water impairments, or as required by the Regional Board.  General Permit, Section XI.B.6.  According to the Facility's NOI, LA Galvanizing operates under Standard Industrial Classification ("SIC") Code 3479 ("Coating, Engraving, and Allied Services, NEC"). SIC Code 3479 requires testing for the additional parameters of Zinc and N+N. Pursuant to the Clean Water Act Section 303(d) list of impaired waterbodies, the Los Angeles River Reach 2 (Carson to Figueroa Street) is listed for the

Notice of Violation and Intent to File Suit
March 2, 2026
Page 5

following water quality impairments: oil and grease, zinc, ammonia, copper, indicator bacteria, lead, nutrients (algae), and trash. The Los Angeles River Reach 1 (Estuary to Carson Street) is listed for the following water quality impairments: profenofos, iron, oil and grease, toxicity, pyrethroids, fipronil, imidacloprid, bifenthrin, cypermethrin, cyfluthrin, deltamethrin, permethrin, aluminum, ammonia, copper, cyanide, indicator bacteria, lead, nutrients (algae), pH, trash, and zinc. The Los Angeles River Estuary is listed for the following water quality impairments: copper, dissolved oxygen, zinc, indicator bacteria, chlordane, DDT, PCBs, toxicity, and trash. San Pedro Bay is listed for copper, DDE, chlordane, PCBs, Total DDT, and toxicity. The following impairments exist within the HUC10 watershed: ammonia, cyanide, diazinon, dissolved oxygen, *E. coli* and enterococcus, copper, dissolved copper, zinc, lead, cadmium, nitrates and nitrites, oil and pH.  The SWPPP states that of those listed impairments, only zinc is associated with the industrial activities at the Facility.

According to its 2023 SWPPP, LA Galvanizing is comprised of at least three contiguous properties. The 2023 SWPPP indicates that each of the properties is a separate drainage area covered in 100% impervious surfaces. Surface water from the northern parcel flows south and is collected in a sump where it is pumped across 53rd Street into the middle parcel. Surface drainage from the middle parcel flows south in a trench sump along the perimeter of the Facility. Water from the sump is pumped into a Silver Bullet treatment system with a single discharge point onto 53rd street. The 2023 SWPPP states that storm water is discharged into the MS4 and then to Compton Creek.

The 2023 SWPPP describes the Facility's galvanizing operations as involving extensive chemical cleaning and hot-dip zinc coating processes. Parts are first treated in a heated caustic cleaning tank containing a sodium hydroxide solution, then immersed in sulfuric acid baths, followed by reverse-flow rinse tanks, and finally cleaned in a muriatic (hydrochloric) acid bath. After chemical preparation, the parts are transferred to a galvanizing tank for immersion in molten zinc, removed, cooled, inspected, and subject to minor deburring and surface finishing. The SWPPP also describes zinc dust collection from the hot-dip galvanizing process, with extractor fans conveying zinc particles to a baghouse for storage in super sacks.

The 2023 SWPPP states that no industrial activity occurs on the southmost portion of the Facility. However, it also describes the yard south of 53rd Street as being used to clean coated steel parts and load customer trucks. The 2023 SWPPP further acknowledges that parts to be treated are received at the southern properties, unloaded from customer or company trucks using forklifts, mounted onto processing racks, and transported by forklift to the cleaning line. Industrial materials, including finished products, are stored in these southern areas, and industrial equipment – including forklifts and trucks – operate there.

In addition, based on LA Waterkeeper's observations, machining operations also occur on the south parcel. These activities involve the handling of industrial materials and the operation of industrial equipment in an area that is identified in the 2023 SWPPP as part of the Facility and that drains to the municipal storm drain system.

The middle parcel was also expanded at some point between May and July 2025, but this expansion is not reflected on any site map or SWPPP revision, and thus an entire portion of the Facility is not included in any of the required storm water documents.

Notice of Violation and Intent to File Suit
March 2, 2026
Page 6

The areas of industrial activities are sources of pollutants at the Facility.  From multiple drainage areas, the Facility discharges to municipal storm drains that discharge to Compton Creek and the Receiving Waters. The Receiving Waters are waters of the United States within the meaning of the Clean Water Act.

## II.   LA Galvanizing's Violations of the Act and Permit.

On July 1, 2020, the amendment to the General Permit by Order No. 2018-0028-DWQ became enforceable and updated pollutant-discharge standards including Total TMDL Implementation Requirements and Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use.  General Permit Attachment E.  Any exceedance of a Numeric Effluent Limitation ("NEL") following July 1, 2020 is a per se violation of the General Permit and Clean Water Act.  For this Facility, the applicable NEL for zinc is 0.159 mg/L. In recent reporting years, and also following the implementation of the NEL for the LA River, LA Galvanizing had numerous exceedances, and LA Waterkeeper alleges that LA Galvanizing will continue to exceed the NELs in the future.

Based on its review of available public documents, LA Waterkeeper is informed and believes that LA Galvanizing, through its operation of the Facility, is in ongoing violation of both the substantive and procedural requirements of the CWA and the General Permit.  These violations are ongoing and continuous.  Consistent with the five-year statute of limitations applicable to citizen enforcement actions brought pursuant to the federal Clean Water Act, LA Galvanizing is subject to penalties for violations of the Act since March 2, 2021.

### A.   LA Galvanizing Discharges Storm Water Containing Pollutants in Violation of the General Permit's Discharge Prohibitions, Receiving Water Limitations and Effluent Limitations.

LA Galvanizing's storm water sampling results provide conclusive evidence of LA Galvanizing's failure to comply with the General Permit's discharge prohibitions, receiving water limitations and effluent limitations at its Facility.  Self-monitoring reports under the Permit are deemed "conclusive evidence of an exceedance of a permit limitation." *Sierra Club v. Union Oil*, 813 F.2d 1480, 1493 (9th Cir. 1987).

#### 1.   Applicable Water Quality Standards.

The General Permit requires that storm water discharges and authorized non-storm water discharges shall not cause or threaten to cause pollution, contamination, or nuisance.  General Permit, Discharge Prohibition III.C.  The General Permit also prohibits discharges that violate any discharge prohibition contained in the applicable Regional Water Board's Basin Plan or statewide water quality control plans and policies.  General Permit, Discharge Prohibition III.D. Furthermore, storm water discharges and authorized non-storm water discharges shall not adversely impact human health or the environment, and shall not cause or contribute to a violation of any water quality standards in any affected receiving water.  General Permit, Receiving Water Limitations VI.A, VI.B.

Dischargers are also required to prepare and submit documentation to the Regional Board upon determination that storm water discharges are in violation of the General Permit's Receiving Water Limitations.  General Permit, Special Condition XX.B.  The documentation

Notice of Violation and Intent to File Suit
March 2, 2026
Page 7

must describe changes the discharger will make to its current storm water best management practices ("BMPs") in order to prevent or reduce any pollutant in its storm water discharges that is causing or contributing to an exceedance of water quality standards. *Id.*

The California Toxics Rule ("CTR") is an applicable water quality standard under the Permit, the violation of which is a violation of Permit conditions. *Cal. Sportfishing Prot. Alliance v. Chico Scrap Metal, Inc.*, 2015 U.S. Dist. LEXIS 108314, *21 (E.D. Cal. 2015). The CTR establishes numeric receiving water limits for toxics pollutants in California surface waters. 40 C.F.R. § 131.38. The CTR establishes a numeric limit for at least one of the pollutants discharged by LA Galvanizing: zinc – 0.12 mg/L (maximum concentration).

The Water Quality Control Plan for the Los Angeles Region ("Basin Plan") sets forth water quality standards and prohibitions applicable to LA Galvanizing's storm water discharges from its Facility. The Basin Plan includes a narrative toxicity standard which states that "(a)ll waters shall be maintained free of toxic substances in concentrations that produce detrimental physiological responses in human, plant, animal, or aquatic life." The Basin Plan's Water Quality Standards require narrower pH range of 6.5 – 8.5 pH units for inland surface waters such as the Los Angeles River.

### 2.      Applicable Effluent Limitations.

Dischargers are required to reduce or prevent pollutants in their storm water discharges through implementation of best available technology economically achievable ("BAT") for toxic and nonconventional pollutants and best conventional pollutant control technology ("BCT") for conventional pollutants. General Permit, Effluent Limitation V.A. Conventional pollutants include total suspended solids, oil & grease, pH, biochemical oxygen demand and fecal coliform. 40 C.F.R. § 401.16. All other pollutants are either toxic or nonconventional. 40 C.F.R. §§ 401.15-16.

Under the General Permit, benchmark levels established by the EPA ("EPA benchmarks") and Numeric Action Levels ("NAL") serve as guidelines for determining whether a facility discharging industrial storm water has implemented the requisite BAT and BCT. *Santa Monica Baykeeper v. Kramer Metals,* 619 F. Supp. 2d 914, 920, 923 (C.D. Cal 2009); General Permit, Exceedance Response Action XII.A.

The following EPA benchmarks have been established for pollutants discharged by LA Galvanizing: total suspended solids – 100 mg/L; pH – 6.0-9.0 s.u.; zinc – 0.12 mg/L; aluminum – 1.1 mg/L; chemical oxygen demand – 120 mg/L; and, nitrate plus nitrite nitrogen – 0.68 mg/L. The following Annual NALs have been established for pollutants discharged by LA Galvanizing: total suspended solids – 100 mg/L; oil & grease – 15.0 mg/L; zinc – 0.26 mg/L; aluminum – 0.75 mg/L; chemical oxygen demand – 120 mg/L; iron – 1.0 mg/L; and nitrate plus nitrite nitrogen – 0.68 mg/L. Additionally, the following instantaneous NALs have been established for pollutants discharged by LA Galvanizing: pH – 6.0-9.0 s.u.; total suspended solids – 400 mg/L; and oil & grease – 25.0 mg/L.

Notice of Violation and Intent to File Suit
March 2, 2026
Page 8

The General Permit also requires a permittee whose discharges violate the General Permit's Receiving Water Limitations or water quality standards, such as, NALs, TMDLs, TNALs, and NELs to implement additional BMPs or other control measures that are tailored to that facility in order to attain compliance with the receiving water limitation.  A discharger that is notified by a Regional Board or who determines the discharge is causing or contributing to an exceedance of a water quality standard must comply with the Water Quality Based Corrective Action in Section XX.B of the General Permit and report to the Regional Board regarding the same.  General Permit, Section XX.B.  As noted above, the NELs established numeric limits for at least one of the pollutants discharged by LA Galvanizing: zinc (0.159 mg/L).

### 3.    LA Galvanizing's Storm Water Sample Results

As detailed above, LA Galvanizing's SWPPP describes two discharge points/sampling locations.[2] Storm water discharged from the Facility flows into the MS4 to the Receiving Waters.

Except as provided in Section XI.C.4 of the General Permit, samples shall be collected from each drainage area at all discharge locations.  The samples must be: a) representative of storm water associated with industrial activities and any commingled authorized non-storm water discharges; or, b) associated with the discharge of contained storm water.  At this time, LA Waterkeeper is unable to determine if storm water from the two sampling points at the Facility is representative of industrial storm water at the Facility.

The following discharges of pollutants from the Facility have violated the discharge prohibitions, receiving water limitations and effluent limitations of the Permit:

### a.    Discharge of Storm Water Containing Zinc at Concentrations in Excess of Applicable Water Quality Standards

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | Numeric Effluent Limitation (mg/L) | CTR & EPA Benchmark (mg/L) | NAL (mg/L) |
|---|---|---|---|---|---|---|
| 10/14/2025 | DP #1 | Zn | 0.16 | 0.159 | 0.12 | 0.26 |
| 2/13/2025 | DP #2 | Zn | 2.8 | 0.159 | 0.12 | 0.26 |
| 2/5/2025 | DP #2 | Zn | 1.98 | 0.159 | 0.12 | 0.26 |

---

[2] These discharge points are also referred to as "North System Effluent" and "South System Effluent," as well as variations of "System Effluent: Silver Bullet Office" and "System Effluent: Silver Bullet" and "SB Office," etc. LA Waterkeeper understands "DP #1" to be the same discharge location as "South System Effluent," "Silver Bullet," "System Effluent: Silver Bullet Office," and "SB Office"; and, "DP #2" to be the same discharge location as "North System Effluent" and "Silver Bullet"; however, this letter will refer to each discharge location by the name provided on the laboratory reports submitted to SMARTS.

Notice of Violation and Intent to File Suit
March 2, 2026
Page 9

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | Numeric Effluent Limitation (mg/L) | CTR & EPA Benchmark (mg/L) | NAL (mg/L) |
|---|---|---|---|---|---|---|
| 1/3/2024 | South System Effluent | Zn | 0.399 | 0.159 | 0.12 | 0.26 |
| 12/20/2023 | South System Effluent | Zn | 1.2 | 0.159 | 0.12 | 0.26 |
| 1/30/2023 | System Effluent Silver Bullet Office | Zn | 4.4 | 0.159 | 0.12 | 0.26 |
| 6/14/2022 | Bullet Office | Zn | 0.2 | 0.159 | 0.12 | 0.26 |
| 12/23/2021 | Silver Bullet Effluent | Zn | 0.44 | 0.159 | 0.12 | 0.26 |
| 12/23/2021 | Silver Bullet Effluent | Zn | 0.44 | 0.159 | 0.12 | 0.26 |
| 12/14/2021 | Totes | Zn | 3.4 | 0.159 | 0.12 | 0.26 |
| 12/14/2021 | Silver Bullet | Zn | 3.4 | 0.159 | 0.12 | 0.26 |
| 10/25/2021 | Totes | Zn | 3.5 | 0.159 | 0.12 | 0.26 |
| 10/25/2021 | Silver Bullet Effluent | Zn | 2.4 | 0.159 | 0.12 | 0.26 |
| 3/10/2021 | Front Office #1 | Zn | 2.1 | 0.159 | 0.12 | 0.26 |
| 3/10/2021 | Silver Bullet Effluent | Zn | 2.9 | 0.159 | 0.12 | 0.26 |
| 3/3/2021 | Front Office #1 | Zn | 0.38 | 0.159 | 0.12 | 0.26 |
| 3/3/2021 | Silver Bullet Effluent | Zn | 0.22 | 0.159 | 0.12 | 0.26 |

**b.  Discharge of Storm Water Containing Iron at Concentrations in Excess of Applicable Water Quality Standards**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | NAL (mg/L) |
|---|---|---|---|---|
| 10/14/2025 | DP #2 | Fe | 3.3 | 1.00 |
| 1/22/2024 | DP #1 | Fe | 1.7 | 1.00 |
| 1/9/2023 | SB Office | Fe | 1.04 | 1.00 |
| 6/14/2022 | Bullet Office | Fe | 5.29 | 1.00 |
| 3/28/2022 | Silver Bullet Office Unit | Fe | 1.43 | 1.00 |
| 10/25/2021 | Silver Bullet | Fe | 4.74 | 1.00 |
| 3/10/2021 | Silver Bullet Effluent | Fe | 1.05 | 1.00 |

Notice of Violation and Intent to File Suit
March 2, 2026
Page 10

### c. Discharge of Storm Water Containing Nitrogen at Concentrations in Excess of Applicable Water Quality Standards

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | EPA Benchmark/NAL (mg/L) |
|---|---|---|---|---|
| 12/14/2021 | Totes | N+N | 0.73 | 0.68 |
| 10/25/2021 | Totes | N+N | 1.23 | 0.68 |
| 3/3/2021 | Front Office #1 | N+N | 0.8 | 0.68 |

### d. LA Galvanizing's Sample Results Are Evidence of Violations of the General Permit

LA Galvanizing's sample results demonstrate violations of the Permit's discharge prohibitions, receiving water limitations and effluent limitations set forth above. LA Waterkeeper is informed and believes that LA Galvanizing has known that its storm water contains pollutants at levels exceeding applicable water quality standards since at least March 2, 2021, including at least fifteen exceedances of water quality standards for zinc (all of which are above the NEL); seven exceedances of water quality standards for iron; and, three exceedances of water quality standards for nitrate plus nitrite nitrogen. In addition, LA Waterkeeper has collected samples from storm water discharges coming from LA Galvanizing's Facility that contained zinc and iron exceeding applicable water quality standards:

| Date | Name | Parameter | Result | NEL/NAL |
|---|---|---|---|---|
| 11/15/2025 | LA Galvanizing 53rd St South | Zn | 2.3 mg/L | 0.159 mg/L |
| 11/15/2025 | LA Galvanizing 52nd St South | Zn | 9.4 mg/L | 0.159 mg/L |
| 11/15/2025 | LA Galvanizing 53rd St North | Fe | 4.0 mg/L | 1.0 mg/L |
| 11/15/2025 | LA Galvanizing 53rd St North | Zn | 9.9 mg/L | 0.159 mg/L |

LA Waterkeeper alleges that such violations occur each time storm water discharges from the Facility. **Attachment A** hereto, sets forth the specific rain dates on which LA Waterkeeper alleges that LA Galvanizing has discharged storm water containing impermissible levels of zinc, iron, and nitrate plus nitrite nitrogen in violation of the General Permit. General Permit, Discharge Prohibitions III.C and III.D; Receiving Water Limitations VI.A, VI.B; Effluent Limitations V.A and V.C.

### 4. LA Galvanizing Has Failed to Implement BAT and BCT

Dischargers must implement BMPs that fulfill the BAT/BCT requirements of the CWA

Notice of Violation and Intent to File Suit
March 2, 2026
Page 11

and the General Permit to reduce or prevent discharges of pollutants in their storm water discharges.  General Permit, Effluent Limitation V.A.  To meet the BAT/BCT standard, dischargers must implement minimum BMPs and any advanced BMPs set forth in the General Permit's SWPPP Requirements provisions where necessary to reduce or prevent pollutants in discharges.  *See* General Permit, Sections V, X.H.1-2.

LA Galvanizing has failed to implement and maintain the minimum BMPs required by the General Permit as evidenced by the exceedances identified above.  Specifically, LA Galvanizing has failed to comply with the following: good housekeeping requirements, preventive maintenance requirements; spill and leak prevention and response requirements; material handling and waste management requirements; erosion and sediment controls; employee training and quality assurance; and record keeping.  Permit, Section X.H.1(a-g).

LA Galvanizing has further failed to implement and/or maintain advanced BMPs necessary to reduce or prevent discharges of pollutants in its storm water sufficient to meet the BAT/BCT standards, including: exposure minimization BMPs; containment and discharge reduction BMPs; treatment control BMPs; or other advanced BMPs necessary to comply with the General Permit's effluent limitations.  General Permit, Sections X.H.2.  LA Galvanizing's own storm water sampling results are further evidence of its failure to implement BMPs that meet the BAT/BCT standards.  In reporting years identified below, LA Galvanizing has exceeded the annual NAL for zinc and iron. LA Waterkeeper alleges that if LA Galvanizing had collected the required number of samples in each reporting period, and had collected samples from each place that it discharges storm water from the Facility, it would have exceeded the annual NAL for additional pollutants, and in additional years.

| Reporting Year | Pollutant | Average Pollutant Concentration | Numeric Action Level (Annual) |
|---|---|---|---|
| 2025-2026 | Fe | 2.04 mg/L[3] | 1.00 mg/L |
| 2024-2025 | Zn | 1.21 mg/L | 0.26 mg/L |
| 2023-2024 | Zn | 0.35 mg/L | 0.26 mg/L |
| 2022-2023 | Zn | 0.57 mg/L | 0.26 mg/L |
| 2021-2022 | Zn | 1.91 mg/L | 0.26 mg/L |
| 2021-2022 | Fe | 1.88 mg/L | 1.00 mg/L |
| 2020-2021 | Zn | 1.65 mg/L | 0.26 mg/L |

The Facility's Level 2 ERA Technical Report dated December 18, 2022 identifies exceedances for aluminum, iron, zinc, and total suspended solids and describes the implementation of additional source control and treatment BMPs to address these parameters. The report explains that zinc is the primary industrial pollutant source and that exceedances were occurring at the Front Office discharge point despite installation of an additional ion exchange vessel at the Silver Bullet effluent discharge. To address dissolved zinc not removed through

---

[3] The 2025-2026 reporting year is ongoing, but at the time of this letter, the average concentration exceeds the NAL.

Notice of Violation and Intent to File Suit
March 2, 2026
Page 12

filtration alone, the report proposes the use of cationic exchange resin and scaling treatment components to match lower flows at the affected discharge point.

The 2022 ERA Report also describes implemented source control BMPs, including relocating storage of zinc-, aluminum-, and iron-containing materials under permanent cover, increasing housekeeping measures, and deploying "MagStyx" high-powered synthetic magnets within the stormwater system to capture iron fines and associated particulate-bound metals. The report further identifies structural and treatment BMP enhancements added during the 2022–2023 season, including installation of rain barrel polishing filters at downspouts, Metal Proof media socks and Enviro Soxx filter media in swales and trenches, Metal Zorb sponge media in blind sumps, and the addition of a media vessel to the Silver Bullet filter train to address dissolved metals. The facility estimated that more comprehensive stormwater treatment system upgrades would cost between $100,000 and $180,000, which it characterized as unaffordable.

The updated Level 2 Technical Report dated January 31, 2024 focuses on total zinc exceedances and identifies wind dispersion and track-out of particulates generated during cooling, deburring, and surface finishing as contributing sources, along with outdoor storage of finished products and galvanized facility structures. In response, the facility reports installation of structural BMPs to divert and collect runoff for treatment through an advanced system consisting of flocculation, sedimentation, filtration, and ion exchange, and states that a second stormwater treatment system was installed to treat discharge from Drainage Area 1, along with new ion exchange media in both systems to improve removal efficiency. The report also acknowledges that an incidental zinc exposure event on January 30, 2023 resulted in elevated zinc concentrations and that operations were modified to prevent recurrence.

The December 2024 Level 2 Technical Report Update confirms that zinc continued to exceed the Annual NAL and NEL during the 2023-2024 reporting year, particularly at DP #2, and states that Level 2 BMPs reduced average zinc concentrations by 49% from 2022–2023 to 2023–2024, but that an additional 11.5% reduction is needed to meet the NAL. The report describes additional or improved BMPs implemented in 2024, including substitution of new ion exchange metals media into an existing treatment tank, installation of new Metal Proof Plus media socks, industrial wattles, and flocculant in gutter troughs leading to filtration units, installation of rubber guards along trench grates to keep oils and grease out of gutter troughs, and addition of oil pillows in sumps. The facility also confirmed implementation of daily inspections and sweeping to address accumulation of dust and debris identified during a facility inspection.

Finally, the December 22, 2025 Water Quality Based Corrective Action Report states that zinc dust and fines generated during cleaning operations were identified as contributing sources and that corrective actions include a more regimented daily end-of-shift clean-up to remove zinc dust, double-bagging of filter housings to improve filtration, clean-out and replacement of metals-removal media, and installation of fresh ion exchange media in the treatment system in August 2025.

However, these measures, by the Facility's own admissions and documented outcomes, have failed to prevent recurring exceedances, demonstrating that the Facility has not implemented BAT/BCT as required by the Industrial General Permit and the Clean Water Act.

Notice of Violation and Intent to File Suit
March 2, 2026
Page 13

Each day that LA Galvanizing has failed to develop and implement BAT and BCT at the Facility in violation of the General Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a).  LA Galvanizing has been in violation of the BAT and BCT requirements at its Facility every day since at least March 2, 2021.

**5.    LA Galvanizing Has Failed to Comply with the Monitoring Requirements of the General Permit.**

The General Permit requires dischargers to implement a Monitoring Implementation Plan.  General Permit, Section X.I.  As part of their monitoring plan, dischargers must identify all storm water discharge locations.  Permit, Section X.I.2.  Dischargers must then conduct monthly visual observations of each drainage area, as well as visual observations during discharge sampling events.  General Permit, Section XI.A.1 and 2.

Dischargers must collect and analyze storm water samples from two (2) storm events within the first half of each reporting year (July 1 to December 31) and two (2) storm events during the second half of each reporting year (January 1 to June 30).  General Permit, Section XI.B.  Section XI.B requires dischargers to sample and analyze during the wet season for basic parameters such as pH, total suspended solids ("TSS") and oil and grease ("O&G"), certain industry-specific parameters set forth in Table 2 of the General Permit, and other pollutants likely to be in the storm water discharged from the facility based on the pollutant source assessment.  General Permit, Section XI.B.6.  Dischargers must submit all sampling and analytical results via SMARTS within thirty (30) days of obtaining all results for each sampling event.  General Permit, Section XI.B.11.

LA Galvanizing has failed to develop and implement an adequate Monitoring Implementation Plan for its Facility, and has thus violated the monitoring requirements of the General Permit. LA Galvanizing has failed to collect storm water samples from each of the places that it discharges at the Facility. LA Galvanizing has also failed to collect the required number of samples for each reporting period. For example, during its November 15, 2025 inspection, LA Waterkeeper documented at least eight discharge locations from the Facility that LA Galvanizing does not sample or monitor. Given the exceedances of zinc, in particular, LA Galvanizing's discharges that bypass their advanced treatment system, LA Waterkeeper alleges that these untreated and unmonitored discharges contain impermissibly high concentration of pollutants. This was confirmed by the samples collected by LA Waterkeeper, discussed above. In addition, LA Galvanizing failed to collect the required number of samples from the following discharge points during the specified reporting years:

| Reporting Year | Discharge Point | Number of Samples Collected in 1st Half of Reporting Period | Number of Samples Collected in 2nd Half of Reporting Period |
|---|---|---|---|
| 2020-2021 | DP #1 | 1 | 3 |
| 2020-2021 | DP #2 | 1 | 3 |
| 2021-2022 | Silver Bullet | 3 | 2 |
| 2021-2022 | Totes | 2 | 0 |

Notice of Violation and Intent to File Suit
March 2, 2026
Page 14

| 2023-2024 | North System Effluent | 1 | 2 |
|---|---|---|---|
| 2023-2024 | South System Effluent | 1 | 2 |
| 2024-2025 | DP #1 | 0 | 2 |
| 2024-2025 | DP #2 | 0 | 2 |
| 2025-2026 | DP #1 | 1 | 0 |
| 2025-2026 | DP #2 | 1 | 0 |

Each day that LA Galvanizing has failed to develop and implement an adequate Monitoring Implementation Plan is a separate and distinct violation of the Act and Permit. LA Galvanizing has been in violation of the Monitoring requirements every day since at least March 2, 2021.

### 6. LA Galvanizing Has Failed to Develop and Implement an Adequate Storm Water Pollution Prevention Plan.

The General Permit requires dischargers to develop and implement a site-specific SWPPP. General Permit, Section X.A. The SWPPP must include, among other elements: (1) the facility name and contact information; (2) a site map; (3) a list of industrial materials; (4) a description of potential pollution sources; (5) an assessment of potential pollutant sources; (6) minimum BMPs; (7) advanced BMPs, if applicable; (8) a monitoring implementation plan; (9) annual comprehensive facility compliance evaluation; and, (10) the date that the SWPPP was initially prepared and the date of each SWPPP amendment, if applicable. *See id.*

Dischargers must revise their SWPPP whenever necessary and certify and submit via the Regional Board's Storm Water Multiple Application and Report Tracking System ("SMARTS") their SWPPP within 30 days whenever the SWPPP contains significant revisions(s); and, certify and submit via SMARTS for any non-significant revisions not more than once every three (3) months in the reporting year. General Permit, Section X.B.

LA Waterkeeper's investigation indicates that LA Galvanizing has been operating with an inadequately developed and implemented SWPPP in violation of General Permit requirements. LA Galvanizing has failed to evaluate the effectiveness of its BMPs and to revise its SWPPP as necessary, has failed to develop and implement an adequate site map, and has failed to describe and evaluate the industrial materials and potential pollutant sources at the Facility, all of which have resulted in the Facility's numerous continuing effluent limitation violations.

Each day LA Galvanizing failed to develop and implement an adequate SWPPP at its Facility is a violation of the General Permit. The SWPPP violations described above were at all times in violation of Section X of the General Permit. LA Galvanizing has been in violation of these requirements at its Facility every day since at least March 2, 2021.

Notice of Violation and Intent to File Suit
March 2, 2026
Page 15

### 7. LA Galvanizing Has Failed to Submit Timely, True and Correct Reports.

Section XVI of the Permit requires dischargers to submit an Annual Report by July 15th of each reporting year to the Regional Board. The Annual Report must be signed and certified by a discharger's Legally Responsible Person, or Duly Authorized Representative. General Permit, Sections XVI.A, XXI.K. The Annual Report must include a compliance checklist, certifying compliance with the General Permit and an explanation of any non-compliance. General Permit, Section XVI.B.

The General Permit also requires dischargers who exceed NELs and NALs to comply with Water Quality Based Corrective Action, Section XX.B, and Exceedance Response Actions, Section XII, respectively.

LA Waterkeeper's investigations indicate that LA Galvanizing has failed to submit all required reports pursuant to Sections XX.B and XII in response to their numerous exceedances of both NELs and NALs. Further, LA Galvanizing's ERA reports are inadequate as evidenced by the continued exceedances, even after apparently full implementation of the BMPs described therein. Each day LA Galvanizing failed to submit timely, true and correct reports is a separate violation of the Clean Water Act. LA Galvanizing has been in violation of these requirements at its Facility every day since at least March 2, 2021.

## III. Persons Responsible for the Violations.

LA Waterkeeper puts LA Galvanizing on notice that they are the persons and entities responsible for the violations described above. If additional persons are subsequently identified as also being responsible for the violations set forth above, LA Waterkeeper puts LA Galvanizing on formal notice that it intends to include those persons in this action.

## IV. Name and Address of Noticing Parties.

The name, address and telephone number of each of the noticing parties is as follows:

Bruce Reznik, Executive Director
Los Angeles Waterkeeper
360 E 2nd Street Suite 250
Los Angeles, CA 90012
(310) 394-6162

## V. Counsel.

LA Waterkeeper has retained legal counsel to represent it in this matter. Please direct all communications to:

William N. Carlon

Notice of Violation and Intent to File Suit
March 2, 2026
Page 16

Law Office of William Carlon
437 Post Street
Napa, CA 94559
(530) 5144115
william@carlonlaw.com

## VI.     Conclusion

LA Waterkeeper believes this Notice of Violations and Intent to File Suit sufficiently states grounds for filing suit. We intend to file a citizen suit under Section 505(a) of the CWA against LA Galvanizing and their agents for the above-referenced violations upon the expiration of the 60-day notice period. If you wish to pursue remedies in the absence of litigation, we suggest that you initiate those discussions within the next 20 days so that they may be completed before the end of the 60-day notice period. We do not intend to delay the filing of a complaint in federal court if discussions are continuing when that period ends.

Sincerely,

William N. Carlon
Law Office of William Carlon
Counsel for LOS ANGELES
WATERKEEPER

Notice of Violation and Intent to File Suit
March 2, 2026
Page 17

## **SERVICE LIST**

### **VIA CERTIFIED MAIL**

Lee Zeldin, Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Mike Martucci, Acting Regional Administrator
U.S. Environmental Protection Agency, Region IX
75 Hawthorne Street
San Francisco, CA 94105

Pamela Bondi, U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

Eric Oppenheimer, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, CA 95812

Susana Arredondo, Executive Officer
Los Angeles Regional Water Quality Control Board
320 W 4th Street, #200
Los Angeles, CA 90013

**ATTACHMENT A**
**Notice of Intent to File Suit, LA Galvanizing**
**Significant Rain Events,\* March 2, 2021 – March 2, 2026**

| | | |
|---|---|---|
| March 3, 2021 | February 28, 2023 | March 5, 2025 |
| March 10, 2021 | March 10, 2023 | March 12, 2025 |
| March 11, 2021 | March 11, 2023 | March 13, 2025 |
| March 15, 2021 | March 14, 2023 | April 26, 2025 |
| July 26, 2021 | March 15, 2023 | October 14, 2025 |
| October 25, 2021 | March 21, 2023 | November 14, 2025 |
| December 14, 2021 | March 22, 2023 | November 15, 2025 |
| December 16, 2021 | March 29, 2023 | November 16, 2025 |
| December 23, 2021 | March 30, 2023 | November 17, 2025 |
| December 24, 2021 | May 4, 2023a | November 20, 2025 |
| December 25, 2021 | August 20, 2023 | November 21, 2025 |
| December 26, 2021 | August 21, 2023 | December 24, 2025 |
| December 27, 2021 | November 15, 2023 | December 26, 2025 |
| December 29, 2021 | December 20, 2023 | December 31, 2025 |
| December 30, 2021 | December 21, 2023 | January 1, 2026 |
| March 28, 2022 | December 22, 2023 | January 2, 2026 |
| April 21, 2022 | December 30, 2023 | January 3, 2026 |
| September 9, 2022 | January 3, 2024 | January 4, 2026 |
| October 12, 2022 | January 20, 2024 | February 11, 2026 |
| November 2, 2022 | January 22, 2024 | February 16, 2026 |
| November 8, 2022 | February 1, 2024 | February 17, 2026 |
| December 2, 2022 | February 4, 2024 | February 18, 2026 |
| December 4, 2022 | February 5, 2024 | February 19, 2026 |
| December 11, 2022 | February 6, 2024 | |
| December 12, 2022 | February 7, 2024 | |
| December 27, 2022 | February 19, 2024 | |
| December 31, 2022 | February 20, 2024 | |
| January 4, 2023 | February 21, 2024 | |
| January 5, 2023 | March 2, 2024 | |
| January 9, 2023 | March 6, 2024 | |
| January 10, 2023 | March 23, 2024 | |
| January 14, 2023 | March 29, 2024 | |
| January 15, 2023 | March 30, 2024 | |
| January 16, 2023 | April 14, 2024 | |
| January 29, 2023 | January 26, 2025 | |
| January 30, 2023 | January 27, 2025 | |
| February 23, 2023 | February 5, 2025 | |
| February 24, 2023 | February 6, 2025 | |
| February 25, 2023 | February 12, 2025 | |
| February 27, 2023 | February 13, 2025 | |
| February 27, 2023 | January 26, 2025 | |

\* Significant Rain Events are days where the 24-hour rainfall total was at least 0.1 inches according to publicly
available rain and weather data collected at a station located near the Facility.